nett v. Agricultural Ins. Co., 106 N. Y. 243; Freedman v. Fire Assn. of Phila. Co., 168 Pa. 249; Earley v. Mut. Fire Ins. Co., 178 Pa. 631.

*Cyrus G. Derr,* for appellee, cited : West Branch Ins. Co. v. Helfenstein, 40 Pa. 288; McClure v. Watertown Fire Ins. Co., 90 Pa. 277 ; England v. Westchester Fire Ins. Co., 21 Ins. Law Jour. 808 ; Lancaster Silver Plate Co. v. Manchester Fire Assurance Co., 170 Pa. 168; Weisenberger v. Harmony Ins. Co., 56 Pa. 444; Sylvius v. Kosek, 117 Pa. 76.

PER CURIAM, April 1, 1901:

The judgment in this case is affirmed on the opinion of the learned judge of the common pleas.

Judgment affirmed.

---

# Schuldt's Estate.

199     58
f 203    221

199     58
23 SC  151

199     58
31 SC  618

*Will—Remainder—Vested and contingent estates—" Surviving grandchildren."*

Where a fund is given by will to a trustee in trust to pay the income to the testator's widow during her life, and at her decease in trust for grandchildren named, " the interest thereof to be paid to them semi-annually until they have reached the age of twenty-one years, when the said principal sum shall be equally divided amongst my surviving grandchildren, share and share alike," the intent of the testator is that the fund shall vest in such of his surviving children only as shall attain the age of twenty-one years. In such a case it vests indefeasibly in the class when one of them attains the required age.

Argued March 4, 1901. Appeal, No. 354, Jan. T., 1900, by Pennsylvania Trust Company, from decree of O. C. Berks Co., overruling exceptions to adjudication in the estate of Frederick Schuldt, deceased. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Exceptions to adjudication.

BLAND, P. J., filed the following adjudication:

Frederick Schuldt died, testate, on March 25, 1894, having, by his last will and testament, bequeathed, inter alia, as follows:

"First. I give and bequeath unto my wife Louisa Schuldt the sum of forty thousand dollars. . . . The money bequeathed to my wife Louisa, I hereby order and direct that the Reading Trust Company shall invest the same, if not already invested, and pay to her my said wife Louisa the interest thereof semiannually, and after her death the said sum of forty thousand dollars shall be held in trust by the Reading Trust Company for my five grandchildren, viz: Edward Woomer, a son of my daughter Agnes; Agnes Louisa Schuldt, a daughter of my son Frederick Schuldt, deceased; and Louisa, Edna and Elizabeth Schuldt, children of my son Edward Schuldt—the interest thereof to be paid to them annually until they have reached the age of twenty-one years, when the said principal sum of forty thousand dollars shall be divided equally amongst my surviving grandchildren. Should there be any more grandchildren born unto my son Edward, then such child or children shall share equally with the others, above mentioned grandchildren."

From the evidence in the case I find the following facts:

1. That Louisa Schuldt, the wife of the testator, is deceased.

2. That all of the said grandchildren of the testator, mentioned in his will, viz: Edward L. Woomer, Agnes Louisa Schuldt, Louisa Schuldt, Edna Schuldt and Elizabeth Schuldt, were living at the time of his decease, and were all under the age of twenty-one years.

3. That Agnes Louisa Schuldt, one of said grandchildren, died on June 17, 1897, a minor, unmarried and without issue, and before any of the said grandchildren had attained the age of twenty-one years, leaving to survive her a mother, Elizabeth Bossler.

4. That Edward L. Woomer, one of said grandchildren, attained the age of twenty-one years on June 17, 1900, and that he was the first of said grandchildren to attain that age.

5. That no other children have, since the testator's death, been born to said Edward Schuldt, son of the testator.

6. That Louisa Schuldt, Edna Schuldt and Elizabeth Schuldt are minors, and have for their guardian the Pennsylvania Trust Company.

The auditing judge refused to allow the claim of Elizabeth Bossler, mother of Agnes Louisa Schuldt to one fifth of the fund of $40,000, and awarded the whole of the said fund to Edward. Woomer, and to the Pennsylvania Trust Company, guardian of Louisa Schuldt, Edna Schuldt and Elizabeth Schuldt.

The exceptions to the adjudication were dismissed by the court, BLAND, P. J., filing the following opinion:

In the adjudication excepted to, I decided that, upon the true construction of the will of Frederick Schuldt, Agnes Louisa Schuldt did not, at her decease, have an indefeasible vested interest in the $40,000 fund, and the opinion was based upon what seemed to me to be the clearly expressed intention of the testator.

In making distribution of testate estates, the courts are controlled in their action, (1) by rules of law; (2) by the intention of the testator; and (3) where the intention is doubtful, by rules of construction. Rules of law, such as the rule in Shelley's case, the rules against perpetuities and accumulations, and the rule governing lapsed legacies, etc., are of absolute authority, and against them intention is unavailing; but where there is no rule of law, in the strict sense of the examples mentioned, to prevent the operation of the testator's intention, that intention, when sufficiently expressed, must control the court in the distribution. While the court is not permitted to dispose of a testator's estate upon a mere conjecture as to his meaning, and is bound to find the intention clearly expressed in what the testator has written, yet, in the ascertainment of that intent, every part of the will having relation to the question, may be consulted, considered and compared. In this process, the utmost freedom of investigation into the evidences of intention contained in the will, is possessed by the court. Nowhere has this power been better stated than by Judge PENROSE in Duffy's Estate, 36 W. N. C. 200, where he says: "That a will is to he construed in the light of the circumstances surrounding the testator at the time of its execution; that the construction is to be upon the entire instrument; that the interpretation which leads to an intestacy or which defeats, partially or altogether, a manifest purpose of the testator, will not be adopted

if any other is possible; and that to accomplish such purpose, words may be freely transposed, omitted or supplied (Abbot v. Middleton, 21 Beav. 143; Langston v. Pole, 2 Moore & Payne, 490; Leach v. Micklem, 6 East, 486,) are elementary principles."

In Provenchere's Appeal, 67 Pa. 466, SHARSWOOD, J., said: "There are no arbitrary or unbending rules in the construction of the words of a will. No two wills are in all respects alike. Where indeed the same precise form of expression occurs as may have been the subject of some former adjudication, unaffected by any indication of a different intention in other parts of the instrument, the courts, with a view to certainty and stability of titles, will follow the precedent. Counsel can thus be enabled to advise with confidence. Nevertheless, the cardinal canon still holds good, that the intention of the testator of each will separately, is to be gathered from its own four corners. Hence almost every general rule has its recognized special exceptions, with exceptions to such exceptions which bring us back to the general rule again, and this may be and sometimes has been carried even further, in the vain attempt to generalize and classify all the decisions upon this most difficult and doubtful subject—the ascertainment of the intention from the words of a man, who in many cases had no intention at all, the question not being present in his mind at the time the words were used. These remarks are particularly applicable to the controversies which have arisen as to whether future legacies give present vested or contingent interests. The determinations are very numerous—not always reconcilable—and in the nature of the subject this was inevitable. Vice-Chancellor Sir LAUNCELOT SHADWELL has remarked very justly: 'The question is one of substance and not of form. The question in all the cases has been whether the testator intended it as a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies, and the answer to this question has been sought for out of the whole will and not in particular expressions.'"

My conclusion that Agnes Louisa Schuldt did not have an indefeasible vested interest in the fund for distribution was grounded upon what I conceived to be the expressed intention of the testator. The evidences of the intention which con-

trolled my judgment, were contained in the following dispositions of the will; and they seemed to me to show a " clear, manifest and indisputable " intention that only such of the grandchildren named or described as reached the age of twenty-one years, should take the fund under the will:

1. The bequest of the $40,000 fund, which is as follows: "I give and bequeath unto my wife Louisa Schuldt the sum of forty thousand dollars ($40,000.00). . . . The money bequeathed to my wife, Louisa, I hereby order and direct that the Reading Trust Co. shall invest the same—if not already invested—and pay to her my said wife Louisa, the interest thereof semi-annually, and after her death, the said sum of $40,000 shall be held in trust by the Reading Trust Co. for my five grandchildren viz: Edward Woomer, a son of my daughter Agnes—Agnes Louisa Schuldt, a daughter of my son Frederick Schuldt, deceased, and Louisa, Edna and Elizabeth Schuldt, children of my son Edward Schuldt, the interest thereof to be paid to them semi-annually until they have reached the age of twenty-one years—when the said principal sum of $40,000.00 shall be divided equally amongst my surviving grandchildren, share and share alike—should there be any more children born unto my son Edward, then such child, or children, shall share equally, with the others, above mentioned grandchildren."

2. The devise to Agnes Louisa Schuldt, the deceased daughter of the exceptant: "I give and bequeath to my grandchild Agnes Louisa Schuldt, the following described properties, viz: 846–848 Penn Street—907 Franklin Street—845–847 and 815 Cherry Street, Reading, Pa. . . . I hereby appoint the Reading Trust Co. guardian of my grandchild Agnes Louisa Schuldt, who shall see to it that she is properly educated—the income of the properties bequeathed to her—less taxes and repairs shall be paid to her semi-annually. Should said Agnes Louisa Schuldt die before she reaches the age of 21 years, or should she marry and leave no issue, then her share shall be divided equally amongst my surviving grandchildren share and share alike. Should my granddaughter Agnes Louisa Schuldt get married, it is my will that no husband of hers shall have any control of bequests made to her."

3. The executory devise to the grandchild, Edward Woomer,

son of testator's daughter, Agnes Woomer: "The properties mentioned in bequest to my daughter Agnes, I give to her absolutely, with the understanding that no husband of hers shall have any control or interest in same whatever. Should my said daughter die before her son obtains his majority, then said properties shall revert to her son, Edward. Should said Edward die before he reaches the age of 21 years, or die without heirs," (i. e. without children, before reaching the age of twenty-one years), " then said properties shall revert to my surviving grandchildren share and share alike."

4. The bequest of the residue: " After the death of my wife Louisa, and when all my just and legal debts are paid, any moneys remaining over and above the forty thousand dollars herein mentioned, shall be invested by the Reading Trust Company for the benefit of my grandchildren, the interest whereof to be paid to them semi-annually, and the principal divided equally amongst those who reach the age of 21 years."

Agnes Louisa Schuldt having died under the age of twenty-one years, it seems clear to me that the $40,000 fund passed to the surviving grandchildren who should live to attain the age of twenty-one years—subject to the limitation that the persons to take would be determined when one of them attained that age.

In the disposition of that fund the testator says: " The interest whereof to be paid to them semi-annually until they have reached the age of twenty-one years—when the said principal sum of $40,000 shall be divided equally amongst my surviving grandchildren, share and share alike." That the testator did not intend that Agnes Louisa Schuldt should have an indefeasible vested interest in the fund, or in the devise to her, until she reached the age of twenty-one years, is made perfectly plain by the following distinct sentence contained in the second of the foregoing extracts from the testator's will: " Should said Agnes Louisa Schuldt die before she reaches the age of 21 years, or should she marry and leave no issue, then her share shall be divided equally amongst my surviving grandchildren, share and share alike." This is an explicit statement of the testator's intention as to the particular share of Agnes Louisa Schuldt, in the events that have happened.

The same general intent is made equally manifest by the fol-

lowing sentence contained in the executory devise to Edward, in the third of the foregoing extracts: "Should said Edward die before he reaches the age of twenty-one years, or die without heirs, then said properties shall revert to my surviving grandchildren share and share alike;" and by the language of the residuary bequest, contained in the fourth extract: "and the principal divided equally amongst those who reach the age of twenty-one years." Here, in the last quoted words, the testator distinctly declares his intention that the residuary remaining after the $40,000 set apart for his widow, shall go only to those grandchildren who attain the age of twenty-one years; and that is but another and more definite form of expressing the idea which indisputably prevails in every disposition to grandchildren. As stated in the original opinion filed, the will is unskillfully drawn, and is disorderly in the arrangement of its matter. It was not written by the testator, nor by a lawyer, but by a friend of the testator, who was supposed by him to be qualified for the task. It is obvious that the work was not well done, and that the writer used words without understanding their legal meaning; but, pervading the whole scheme of the will, and appearing in every disposition to grandchildren, is the manifest purpose of the testator, to give his estate to such grandchildren only as should reach the age of twenty-one years.

The exceptant complains that this conclusion conflicts with the following rules of testamentary construction:

1. The rule that when the enjoyment of an entire fund is given in fractional parts, at successive periods which must eventually arrive, the distinction betwixt time annexed to payment and time annexed to the gift, becomes unimportant.

2. The rule that the futurity in the time of division of the principal never postpones the vesting of a legacy, when the income in the mean time is payable to the persons entitled to the principal.

3. The rule that "surviving" means surviving the testator, unless there is evidence that the testator meant surviving the time of the period of distribution.

With his characteristic clearness and accuracy, in showing the subordination of rules of construction to expressed intention, Judge ARNOLD, in Woelpper's Appeal, 126 Pa. 562, said: "Technical rules of law are not only wise, but they are indis-

pensable in any orderly system, for the determination of doubtful cases. It is the province of courts to construe wills, not to make or break them. Hence, in doubtful cases, certain rules of law are applied; but where the intention of the testator is clearly to be seen, technical rules are disregarded, and the intention shall prevail unless it is contrary to law: Reck's App., 78 Pa. 432; Baker and Wheeler's App., 115 Pa. 590. Where the meaning of a will is clear, it interprets itself, and neither subsidiary facts nor extrinsic evidence can be introduced to create a doubt: Huber's App., 80 Pa. 348; Sponsler's App., 107 Pa. 95. To the intention of testator, technical language, and even the ordinary meaning of words, must give way: Thompson's App., 100 Pa. 478."

Mr. Hawkins, in his preface to his work on the construction of wills, says: " A rule of construction may always be reduced to the following form: Certain words or expressions, which may mean either x or y, shall, prima facie, be taken to mean x. A rule of construction always contains the saving clause, 'unless a contrary intention appears by the will;' though some rules are much stronger than others, and require a greater force of intention in the context to control them. On the other hand a rule of law which is not a rule of construction (as, the rule in Shelley's case, the rule as to perpetuity, mortmaim, lapse, etc.), acts independently of intention, and applies to dispositions of property in whatever form of words expressed. This difference is fundamental, and lies at the root of this subject."

From the tenor of all the dispositions to grandchildren, it is evident that the writer of this will expressed the general intention of the testator with respect to all those dispositions, in the gift of the residuum of the personal estate remaining after the $40,000 fund was set apart for the widow, in saying " and the principal divided equally amongst those who reach the age of twenty-one years."

When this provision, which is perfectly clear to the effect that none shall take who do not reach the age of twenty-one years, is considered in connection with this one, " should said Agnes Louisa Schuldt die before she reaches the age of 21 years .... then her share shall be divided equally amongst my surviving grandchildren, share and share alike," we have a clear declaration of the meaning of the testator throughout the entire

will when he mentions the age of twenty-one years and "surviving grandchildren;" and it is made plain, that when, in the provision relative to the $40,000 fund, he said, "the interest thereof to be paid to them semi-annually until they have reached the age of twenty-one years—when the said principal sum of $40,000 shall be divided equally amongst my surviving grandchildren, share and share alike," he meant the same thing as he has so clearly expressed in the gift of the personal residue over the $40,000, viz: "and the principal divided equally amongst those who reach the age of twenty-one years."

In support of the rule that the gift of a fund in fractional parts to be enjoyed in succession, imports an intention that all the interests shall vest at the same time, the exceptant cites McGill's Appeal, 61 Pa. 46, McClure's Appeal, 72 Pa. 414, Reed v. Buckley, 5 W. & S. 517, and Letchworth's Appeal, 30 Pa. 175. In those cases, the ulterior interests depended upon no contingency, but were only to await the death of the preceding beneficiary. Death is certain to happen, and is therefore not a contingent event; but whether or not any of the grandchildren of Frederick Schuldt would attain the age of twenty-one years, was uncertain; and as that age, as appears from a consideration of the whole will, was a part of the original description of those grandchildren entitled under it, their taking an indefeasible interest was dependent on the condition of their reaching that age. The very terms of the rule as to fractional parts to be enjoyed in succession, precludes its application where there is uncertainty as to objects. The rule is thus stated by SHARSWOOD, J., in Provenchere's Appeal, 67 Pa. 469, "When the enjoyment of an entire fund is given in fractional parts, at successive periods, which must eventually arrive, the distinction betwixt time annexed to payment and time annexed to the gift, becomes unimportant." As declared in the original opinion filed in this case, the clearly expressed intention of this testator that only those grandchildren who reached the age of twenty-one years should share in the $40,000, brings this case within that class of cases treated in Smith on Executory Interests, secs. 281, 282, under the head of "Cases where an uncertain event is made part of the description of the devisee or legatee;" and the attainment of that age was therefore a condition precedent to an indefeasible vesting of a share.

In support of the rule that there is a presumption of a vested interest from the gift of the income, the exceptant has cited Provenchere's Appeal, 67 Pa. 463, Peterson's Appeal, 88 Pa. 397, Pleasonton's Appeal, 99 Pa. 362, and Reed's Appeal, 118 Pa. 215.

Now, what is the rule as to presumption of vesting arising from a gift of interim income, and under what circumstances is it applicable? In Smith on Executory Interests, the rule is stated, and its application illustrated, in the 4th section of chapter 8, under the head of "Cases where a devise or bequest has reference to a future age, or event not forming part of the original description of the devisee or legatee; and there are indications of, or grounds for supposing an immediate vesting;" and, as rule 2 of the 4th section of chapter 8, its terms are thus stated in section 328: "Where the testator gives the whole of the intermediate income of real estate, or of personal estate, not arising from a charge on real estate, to the person to whom he devises or bequeaths such estate on the attainment of a certain age, but the attainment of that age does not form part of the original description of the devisee or legatee, the interest of the devisee or legatee is vested in right before that age, even though there is no prior distinct gift—no gift at that age; it being considered that the testator merely intended to keep the devisee and legatee out of possession or enjoyment, until he should have become better qualified to manage and more likely to take care of the property." By the terms of the rule, it does not apply where the attainment of a given age forms part of the original description of the legatee, and like all the presumptions dealt with in the 4th section, the gift of interim income is only an "indication of or ground for supposing, an immediate vesting." From the terms of the bequest in question, considered in connection with the other dispositions to grandchildren, I am clearly of the opinion that the objects of the bequest intended by the testator are sufficiently described as grandchildren who reach the age of twenty-one years; and if I am correct in this interpretation, the rule as to presumption from gift of income, has no application.

Pervading all the gifts to grandchildren in this will, there is a plain and harmonious intent to restrict the gifts to those who reach the age of twenty-one years. In the devise to

Agnes Louisa Schuldt, and the executory devise to Edward Woomer, there is an evident intention shown, to give to issue in case of the death of either under twenty-one leaving issue; but wherever the grandchildren themselves are to take, there is a "clear, manifest and indisputable" intention shown, that in order to be qualified to do so, they must have reached the age of twenty-one years. Now, in the cases cited in support of the rule as to income, there is no evidence of intention as to any other time than that presumed in law.

In Provenchere's Appeal, 67 Pa. 463, the testator gave a fund in trust to pay the income to his daughter-in-law "during her widowhood, and after her decease or marriage, to hold the same for the use of my grandchildren A., L., F., and N., share and share alike, the income to be applied to their maintenance and education, and the capital to be paid to them as they respectively attain the age of twenty-one years. In case the daughters marrying in their minority, their shares to be paid at the time of their marriage." Held, that the legacies vested in the grandchildren at the death of the testator.

In Peterson's Estate, 88 Pa. 397, the testator gave an estate for life to each of his children, and provided that if any of his said children should die leaving issue, such issue should, if under age, receive the income of their parent's share, until they attain their majority, when such share was to be paid to them. Held, that a minor grandchild took a vested interest.

In Reed's Appeal, 118 Pa. 215, the testator provided that his executors should keep the proceeds of land sold, invested at interest, and pay over to each of his nine grandchildren one ninth of the interest thereof annually, "or, if any of them have died, leaving heirs, then pay the same to said heirs, and at the full expiration of twelve years from the time of my decease, shall in like manner pay the principal; but neither interest nor principal shall be liable to attachment." Held, that the legacies to the grandchildren were substantive gifts, with time of payment postponed, but certain and unconditioned, and therefore vested at the death of the testator.

In Pleasonton's Appeal, 99 Pa. 362, the legacy in question was held to be contingent and not vested.

It is evident that there is nothing in the cases cited, which would justify the court, in this case, in substituting a legal

presumption, for the plainly expressed intention of the testator.

The cases cited by the exceptant, and this one, are typically different; for in the cases cited, the enjoyment of the bequests of those in remainder is not contingent, but is merely to await the regular expiration of the prior life interest, by the decease of the life beneficiaries, an event certain to happen, whereas, in this case, the right to share in the principal fund, depends upon the attainment of twenty-one years, a contingent event, in fact and law.

In support of the rule that "surviving" means surviving the testator, unless there is evidence that the testator meant surviving the time of the period of distribution, the exceptant cites Johnson v. Morton, 10 Pa. 245, Buckley v. Reed, 15 Pa. 83, and Ross v. Drake, 37 Pa. 373.

In Johnson v. Morton, 10 Pa. 245, the testator devised a plantation to his wife Elizabeth Morton, "to have and to hold during her natural life, and at her decease to descend to my three daughters, Mary, Phebe and Lydia Morton, or the survivor of them, in joint stock, share and share alike." At p. 247, ROGERS, J., said: " It is a cardinal rule in the construction of wills, that the intention of the testator—to be collected from the whole instrument, or, as it is sometimes expressed, from its four corners—is to govern." In an opinion deciding that the word " survivor " referred to the death of the testator, he at p. 252 said: " Although we believe the general rule to be, that the words of survivorship must be referred to the death of the testator, whether the gift is immediate, or the limitation is after a prior estate, or particular interest carved out, yet, that general intent may be controlled by particular expressions in the will, indicating a contrary intent. I have some doubt whether that was not the case here; but on consideration, I have come to the conclusion that it differs in no respect from the case of Rose v. Hill, 3 Burr. 1881, where, in a case nearly similar, the survivorship was referred to the death of the testator."

In Buckley v. Reed, 15 Pa. 83, the bequest was: " Also I direct that the sum of $1,000 be invested by my executors in some secure stock, or loaned on real estate, at their discretion, and the interest thereof to be annually paid to my wife, for

-and during her life. I also direct that my son Johnson shall be paid $25, at the time of the sale of my real estate. Also I direct that the net proceeds of my estate, heretofore ordered by me to be disposed of, shall be equally divided between my remaining children, share and share alike, and at the time of their severally arriving at the age of twenty-one years. And at the decease of my dear wife, that part of my estate set apart for her use, shall then be divided amongst my surviving children or their heirs, as last above directed." In holding that the $1,000 vested at the death of the testator, BELL, J., relied for the construction, upon the words, " shall then be divided amongst my surviving children or their heirs," citing as authority : Patterson v. Hawthorn, 12 S. & R. 112, and King v. King, 1 W. & S. 206, of which cases he said, p. 86 : " In each of them a sum was set apart for the use of the testator's wife during life, and at or after her death to be equally divided among his children or their heirs. It was adjudged the latter words were equivalent to ' legal representatives,' and consequently, the intent was, the legacy should be paid to each child, if living at the distribution, and if not, then to the person who, as its legal representative, was by law entitled to it."

In these cases, the construction implied by the law, and declared in the rule applied, was in harmony with the actual intention expressed by the testator, and not in conflict with it, as would be the case, if the rule were applied here. In this case, it is manifest that the testator intended that none of his grandchildren should take an indefeasible interest in his estate, unless they reached the age of twenty-one years; and that intention is so clear and indisputable, upon the whole will, that not to carry it out in every particular, so far as the law will permit, would be to defeat, to that extent, his expressed wishes. No case has been cited, or can be found, in which the intention of the testator, when it has been expressed with reasonable clearness, has not been allowed to prevail; and ROGERS, J., in Johnson v. Morton, one of the cases cited, declared that the expressed intention must control, when he said, p. 252, " yet that general intent may be controlled by particular expressions in the will, indicating a contrary intent." Buckley v. Reed was decided upon the authority of Patterson v. Hawthorn and King v. King, in each of which there was a simple bequest of a life interest,

and a gift over to second takers "and their heirs." Ross v.
Drake has been referred to at length in the original opinion
filed in this case, and its diversity clearly shown.

If, as I have found, it was the manifest intention of this tes-
tator, that the principal of the $40,000 fund should be enjoyed
only by such of his grandchildren named or described, as should
reach the age of twenty-one years, the contingency of attaining
that age, may be considered either as a condition precedent to a
vested interest in the fund (Smith, Ex. Int. sec. 281), or, as
" superadded description construed to be an alternative limita-
tion of an irregular form;" Smith, Ex. Int. sec. 284. If it be con-
sidered a condition precedent, the vesting would be in suspense
until one of the grandchildren named or described attained the
age of twenty-one years; if mere superadded description, and not
a condition precedent, the interests would vest in the grand-
children in existence at the death of the testator, subject to
open and let in such grandchildren as should afterwards be
born to Edward, and subject to devestment by death under
twenty-one years of age : the interests to become absolute and
indefeasible in such grandchildren named and described, as
should be living when one of the class should attain the age of
twenty-one years ; the class being then full, according to the
rule of construction stated in Hawkins on Wills, pp. 75–76, and
applied in Heisse v. Markland, 2 Rawle, 274, that, " where there
is a bequest of an aggregate fund to children, as a class, and
the share of each child is made payable on attaining a given age,
or marriage, the period of distribution is the time when the
first child becomes entitled to receive his share, and children
coming into existence after that period are excluded." In the
latter of the alternative constructions, there would have been
no intestacy in case of the death of all the grandchildren under
twenty-one years of age ; for in that event, the law supplies a
rule of construction which obviates intestacy, on the authority
of Brown v. Lord Kenyon, 3 Mad. 410, Sturgess v. Pearson,
4 Mad. 412 ; and Belk v. Slack, 1 Keen, 238, which decided that,
" a bequest to several, or to a class, or to such of them as shall
be living at a given period, is construed as a vested gift to all,
subject to be divested in favor of those living at that period, if
there be such ; and if none be living, all are held to take;"
Hawkins on Wills, 266.

The argument has been pressed, that if Agnes Louisa Schuldt had left issue, the effect of the conclusion that she was not possessed of an indefeasible interest at her death, would have deprived her issue of a share of the fund ; but that result does not follow from the decision.   While upon the whole will it is clear that the testator did not intend that any of his grandchildren who died under twenty-one years of age should take an indefeasible interest in the fund, it is equally clear upon the whole will, that he meant to give alternative interests to the issue of such as died, leaving issue, under that age ; and this intention as to the share of Agnes Louisa Schuldt is made perfectly plain when the testator says :  " Should said Agnes Louisa Schuldt die before she reaches the age of twenty-one years, or should she marry and leave no issue, then her share shall be divided equally amongst my surviving grandchildren, share and share alike."   The fund having vested absolutely and indefeasibly on June 17, 1900, upon the attainment of twenty-one years of age by Edward L. Woomer, one of the grandchildren, the question has no relevancy or materiality to any share but that of Agnes Louisa Schuldt; and as to her share, whether it be considered as contingent upon her attaining twenty-one years of age, or defeasibly vested, subject to devestment by her death under twenty-one years, there was a clear gift over to her issue in case of her death under that age, leaving issue.

This case has been argued by Mr. Hiester with great ability, for the exceptant, on the question of testamentary intent, and the authority of the rules of construction invoked ; but, as I read this will, I am clearly justified by unmistakable expressions of the testator's intention, in the distribution made to the grandchildren, who survived Agnes Louisa Schuldt, and were living when Edward L. Woomer attained the age of twenty-one years ; and as the intention of the testator, thus understood, vests the fund exclusively in the natural objects of the testator's affection and bounty, it is my clear conviction that the distribution excepted to is correct.

The exception of Elizabeth Bossler is accordingly overruled, and the adjudication and distribution filed September 28, 1900, is now confirmed absolutely.

*Isaac Hiester*, with him *Gilkeson & James*, for appellant.

*D. E. Schroeder* and *C. H. Ruhl,* for appellees.

PER CURIAM, April 1, 1901 :

We concur in the conclusion announced by the learned judge of the orphans' court, and affirm the decree entered by him.

---

## Strunk, Appellant, *v.* Owen.

*Corporations— Stockholder's meeting—Notice—Fraud—Street railways.*

In an action of trespass by a stockholder of a corporation against certain of the directors and officers of the corporation to recover damages for an alleged depreciation in the value of plaintiff's stock resulting from the lease of the railway owned by the company, where the basis of plaintiff's claim is that he was prevented by fraud from objecting to the lease at a meeting at which the lease was authorized, a nonsuit is properly entered where it appeared that a proper notice of the meeting was duly sent to the stockholders accompanied with a request for proxies, and it appears that the plaintiff attended the meeting and voted, and that the plaintiff and other stockholders knew before the meeting that a vote on the lease was to be taken. In such a case where full information was given as to the terms of the lease, it was immaterial that preliminary negotiations preceding and leading up to the offer of the lease were not communicated to the stockholders.

Argued March 5, 1901. Appeal, No. 59, Jan. T., 1901, by plaintiff, from order of C. P. Berks Co., April T., 1899, No. 84, refusing to take off nonsuit in case of A. S. Strunk v. Benjamin F. Owen, James L. Douglas, John Rick, John A. Rigg, William R. McIlvain and the Reading Traction Company. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Trespass to recover damages for an alleged depreciation in the value of plaintiff's stock in the Reading City Passenger Railway Company. Before ENDLICH, J.

The plaintiff's statement, as amended on the trial, averred that on and before November 14, 1892, he was and still is the owner of ninety-three shares of the capital stock of the Reading City Passenger Railway Company of the par value of $50.00 each, the total number of shares of said stock being 7,000 ; that