PROVOSTY, J.
Plaintiff in the lifetime of his wife, between whom and him the community of acquits and gains existed, acquired in his own name a house and lot in the city of Baton Rouge. At the death of his wife, his three daughters, issue of his marriage with her, inherited the undivided half interest which she, as partner in community, had owned in this property; and he became the usufructuary of this half interest. He lived in this house with his daughters. In 1S95, the daughters being still minors — the oldest 18 years old — the property was adjr dicated to the state at tax sale, for the unpaid taxes oi the preceding year; and the deed to the state was duly recorded. He and his daughters continued to live in the house; he until 1899, when he removed to New Orleans; and they until they sold the property to the defendant Smith in 1906. In the meantime, in 1902 the daughters had bought the property at an auction of state property made under Act No. 80 of 1888, and a deed had been made in their favor and duly recorded.
Plaintiff sues to recover his half of the property and his usufruct of the other half. He denies that the tax sale was valid; it not having been preceded, he contends, by service upon him of a delinquency notice as required by law. And he contends that, even if the tax sale was valid, his daughters by their purchase from the state acquired no title adverse to him, because, as joint owners, they owned the legal duty to pay the taxes, and therefore their said purchase had no other effect, as between him and them, than to operate a redemption of the proper *1092 ty from the tax sale; and that these infirmities in the title were well known to Smith when he acquired; and that, therefore; he acquired subject to them, and has no better title than his vendors had.
Finally, plaintiff contends that, as a partner in the community of acquets and gains whose interes' in the communit., property has been sole without his consent by the heirs of the other partner in community in whose name the property happened to stand of record, he may pursue the property into whosesoever’s hands it may have passed.
We find that the tax sale was valid. The officer who had charge of the serving of the notices of delinquency at that time testifies that he mailed a notice to each of the delinquents, and that it is so certified in his handwriting on the tax roll; that the envelopes in which these notices were mailed were marked “Official,’' with a request of return if not delivered in. five days; and that, if the envelope addressed to the plaintiff had been returned, he (the witness) Wjóuid have known it, because:
“I know that any notices that were returned, as the rule of our office, were investigated and acted on. Knowing Mr. Baum as a business man of Baton Rouge as well as I did, I would have used every effort to have him pay his taxes had his tax notices of delinquency been returned to the tax collector’s office.”
Plaintiff testified positively that he never received the notice. But he testified with equal positiveness at first that at that time he had already removed to New Orleans, leaving his daughters in charge of the house; the evident object of the testimony being to impute to the daughters the delinquency in the payment of the taxes, and to increase the probability of his not having received the delinquency notice. Whereas, later on, he had himself recalled to the stand and testified that his removal to New Orleans was, as stated hereinabove, in 1899. Allowing him, however, the full benefit of his positive statement that he did not receive the notice, the fact remains that the notice was regularly mailed to him in the manner required by law, and the question is presented whether, where all the formalities prescribed by law have been observed in the proceedings for the enforcement of the payment of delinquent taxes, the tax sale is to be set aside, simply because the tax debtor is able or willing to testify that as a matter of fact he never received the delinquency notice. We think not.
Passing to the other points.
Conceding, argumenti gratia, that these minor children of plaintiff owed the legal duty to pay the taxes, the fact from which that duty resulted, namely, their joint ownership with plaintiff, did not appear of record; and hence, so far as the record showed, they did not owe that duty at the time the tax sale to the state was made, and, as a consequence, were in as good a position as any one to acquire from the state; and a purchaser from the owner of record is not required to look beyond the record.
Whether Smith, outside of the record, knew or did not know of this joint ownership, is immaterial; but, in justice to Mr. Smith, We will say that he did not know of it, and had no suspicion of any defect in the title.
The learned counsel for plaintiff contend, however, that Smith must be presumed to have known it because the property was community property, and the public are charged with notice, without registry, of the joint ownership of community property. In answer to this, we will say, first, that knowledge of any particular fact cannot be imputed to one in the absence of any provision having been made for conveying it to him, and that no provision is made by our law for conveying to the public knowledge of the joint ownership of community property; and we will say, secondly, that the title which I the daughters of plaintiff conveyed to Smith *1094 was not a community title, but one derived by purchase from the state. We are not to be understood as intimating that the privilege enjoyed by the heirs of the wife of following into the hands of third persons the interest of the wife in community property alienated by the husband after the death of the wife can in any case be extended to the husband.
Judgment affirmed.