JOSEPH TOMSANY

 VS. **7774** No. 7774

JOHN D. ABADIE

April 19th, 1920.

CHARLES F. CLAIBORNE, JUDGE.

This suit has a two-fold object, first, to annul two tax sales of the same property to the defendant, and, second, in the alternative, to compel the defendant to permit the plaintiff to redeem the property.

The plaintiff, a resident of Pennsylvania, alleged that he was the owner of tract of land situated in the Parish of Jefferson for having purchased the same on August 30th, 1910 by act of E. K. Henriques, Notary, Registered Book 29 p. 648; that John D. Abadie claims to have acquired one undivided half of said property at a sale for taxes of 1913 made on June 26th, 1914, and the other undivided half at a sale for the taxes of 1914 made on August 26th, 1915; that both of said tax sales are null for the reason that no notice was served on petitioner prior to either sale; that on December 3d, 1917 petitioner, by notarial act, tendered the said Abadie a sum sufficient to redeem said property from both of said tax sales, which Abadie refused to accept; and he prayed for judgment annulling said two tax sales, and, in the alternative, recognizing his right to redeem, and his ownership of the property.

Defendant Abadie pleaded a general denial; he averred that he had bought the undivided half of the land at a tax sale made June 20th, 1914, and that he had been in possession of the same since his purchase; and that on August 7th, 1915, at another tax sale, he had bought the other undivided half of the same property, and that he had been in possession of the whole since his purchase; he pleaded the prescription of one and three years; he further averred that he paid taxes on the same and built fences, and ploughed and drained it, and planted trees upon it; he prayed to be quieted in his title, and in the alternative to be reimbursed his taxes and expenses.

There was judgment for the plaintiff annulling the two tax

404

sales for want of notice on plaintiff *and* reimbursing the defendant $72.58 the amount paid by him at the two tax sales.

The defendant has appealed.

Upon the trial of the case the plaintiff introduced evidence to show, and upon the argument in this Court, urged, that the defendant had agreed to permit the plaintiff to redeem; and had extended the time allowed by law to redeem, - and that, therefore, the tender made in December 1917 was timely. We will take up this point first.

Article 233 of the Constitution of 1898 provides that :
"the property sold (for taxes) shall be redeemable at any time for the space of one year &c" -
and Section 63 of Act 170 of 1898 p 346 (376) provides
"that said property shall be redeemable at any time for the space of one year beginning on the day when the said deed is filed for record in the Conveyance Office &c"
This Statute has been upheld in 139 La., 354; 119 La., 662; 142 La 743, and in State ex rel Curtis vs Ross, 144 La., 898 (912). The sale made in June 1914 was registered in the Conveyance Office on June 26th, 1914; and the sale made in August 1915 was registered in the Conveyance Office on September 3rd, 1915.

Joseph W. Sheldon testifies that in March 1916, one year and three months after the registry of the first sale, he received a letter from the plaintiff herein, Joseph Tomsany, a resident of Pennsylvania, in the following words:

"Please pay the taxes for the 8 acres of my land at Crown Point too";

that he called upon the defendant, John D. Abadie, and informed him of the letter he had received, and told him he came to see him with a view of repurchasing the land for Tomsany by paying him his costs; that, at the first interview, Abadie did not appear willing; but that, at a subsequent interview, Abadie said he had spent considerable money in improving the property and that he was not going to lose the money; but that he did not want the man's land, and that he could have it if he paid him his expenses; in a personal interview he had with Tomsany in New Orleans, he believes in July 1916, Tomsany told him he would take legal steps

405

to recover his land; — witness told Abadie repeatedly that he was waiting for his account in order to make him a tender, and Abadie promised to make it, but never did.

Edward F. Henriques testified that on January 18th, 1917 he received a letter from the plaintiff who wrote:

"You know I bout 8-3/4 acres of land for $800.00 from Mr. Glisson at Crown Point; it has been sold for taxes. Mr. Sheldon promised me that he would get it transferred back on my name. Please help Mr. Sheldon to do it";

that he telephoned to Abadie and told him that Tomsany had requested him to attend to redeeming his property from the tax sale; that, as he recollected it, Abadie had told him that he had promised Mr. Sheldon to redeem the land, that he would carry out his word as soon as he was ready; but that he was displeased because he had heard that Tomsany had come to town and had not come to see him.

Plaintiff also offered in evidence a notarial act dated December 3rd, 1917 tendering to Abadie the purchase price of the two tax sales. This tender, morethan one year after the registry of the tax sales, cannot avail the plaintiff, unless we hold that defendant had agreed to allow the redemption and had extended the time to do it.

The defendant, Abadie, denied that he had agreed to the redemption of the property. He testifies as follows:

Q. Did you ever promise him (Sheldon) that the property could and you would let the property be redeemed?
A. No, I refused to have any dealing at all with Mr. Sheldon in the matter".

He denied also that he had ever had any conversation with Mr. Henriques; well he might, as the conversation was over the telephone, and it appears that he did not know Mr. Henriques; he refused to accept the notarial tender.

Richard Bragne swears that about three months after the first sale, at his place of business in this City, he notified plaintiff of the tax sale.

Edward F. Henriques testifies that to his personal knowledge the plaintiff was not in the City of New Orleans between

the years 1913 and up to the summer of 1916 - and that during that time he was in Pennsylvania.

At the time the matter of redeeming the lands was taken up by Sheldon, some time after March 1916, the delay for redemption from the first sale (June 1914) had expired; but the delay had not expired as to the second sale, September 1915. We cannot easily presume that the defendant waived an acquired right as to the first sale, and it does not appear that he did. His consent to the redemption of the first sale and his promise to furnish a statement, did not change plaintiff's position, nor lure him into inaction until the delay for redemption had expired, as in the case of the Succession of Spotorno. It was without consideration and could be withdrawn by him at any time. The most favorable conclusion for the plaintiff that we can draw from the vague and unsatisfactory testimony on this point is that the defendant consented to allow the plaintiff to redeem the second sale or so much of the property as he had the right, at that time, to redeem under the law. Whether by that consent he had agreed to extend the time within which the plaintiff was bound to redeem the second sale is immaterial as we shall see hereafter. The facts of this case are not similar to those in Succession of Spotorno vs Howcott, 119 La., 1032. In that case the Court found that Howcott, in writing, had recognized the right of plaintiff to redeem, and said that he would dispense with a regular tender, and would let plaintiff know later what the amount required was; all this before the expiration of the period of redemption. The Court held that the effect of the letter was to extend the delay for redemption.

II. Was the plaintiff notified by the tax collector that the property would be advertised for sale? The learned Judge of the District Court annulled both tax sales for the want of a legal notice. His reasons were as follows:

"This is a suit to annul an alleged tax-title by which defendant claims to hold plaintiff's property situated in Jefferson Parish. The plaintiff alleges non service of the notice required by Article 233 of the Constitution. It appears that the only notice attempted to be served was by registered letter from the tax-collector to the tax debtor. This or these registered letters were

returned undelivered, and, without investigating the kind of notice, it is certain that no kind was served, as os required. The "notice" is made a condition precedent to a tax sale; hence I infer the nullity of the alleged sale herein. Under the Article in question the method of service may be directed by the Legislature; but the formality of serving notice is fixed and must be complied with, not abrogated by the Legislature. A self-operative provision of the Constitution cannot be changed or abrogated by the legislature. The defendant claims in reconvention if the nullity is upheld his rights as provided in Article Constitution 233. He claims more; but is entitled to the price paid, all taxes and costs paid, with ten per cent per annum & c. This is figured by plaintiff at $72.58 and was tnedered prior to suit. Judgment annulling tax sales on payment of $72.58 and costs herein to follow against defendant".

Article 233 of the Constitution provides that:

"There shall be no forfeiture of property for the nonpayment of taxes, State, levee district, parochial, or municipal, but at the expiration of the year in which said taxes are due the collector shall, without suit, and after giving notice to the delinquent in the manner to be provided by law, advertise for sale in the official journal of the parish &c".

Section 50 of Act 170 of *1898* p 370 provides:

"That on the second day of January 1899 and each subsequent year, or as soon thereafter as possible, the tax collector or sheriff shall address to each tax-payer who has not paid all the taxes which have been assessed to him on immovable property, written or printed notice in the manner provided for in Section 51 that his taxes on immovable property must be paid within twenty days after the service or mailing of said notice, or that said property will be sold according to law & c".

Section 51 provides:

"That the tax collector or Sheriff shall either deliver to each tax-payer in person or shall leave at his residence or

408

place of business in the Parish of Orleans one of said notices, and a return or statement in writing of the mode of such service shall be made by the officer serving the same and be filed in the office of the tax-collector or sheriff and shall be received by the courts as prima facie evidence of notice. In the country parishes this notice shall be sent by registered mail. After the Sheriff shall have completed the mailing of the notices herein required, he shall make out a proces-verbal, stating therein the names of delinquents so notified, their post-office address, brief description of the property. amount of taxes due, which proces-verbal shall be by him signed officially in the presence of two witnesses and by him filed in the office of the Clerk of Court for record and preservation. Said proces-verbal shall be received by the Courts as evidence".

Section 52:

"That the tax-collector or Sheriff shall publish once a week for two weeks, in one newspaper published in his district or parish, if there be one, or in the manner provided for judicial sales if there be none published in this parish, one general notice, substantially in the foregoing form, addressed to all unknown owners, and non-residents whose post-office address is unknown, of assessed immovable property situated in his parish or district, in which he shall describe the property as described in tax roll. &c".

The tax-collector's act of sale to Abadie recites:

"I made out and mailed to said Joseph Tomsany by registered letter a notice in conformity with said Act No. 170 of 1898 & c".

The presumption is that this recital is true. Const.Art. 233; 37 A., 417; 47 A., 1605; 131 La., 541 (553).

Besides, it is admitted as to the tax of 1913,

"that on the 1st day of April 1914, a delinquent tax notice was mailed to Joseph Tomsany by registered mail to Crown Point, the address of said Tomsany last known, but that said notice was mailed back to the Sheriff and ex-officio tax-collector of said Parish unclaimed";

the same admission was made as to the notice for the tax of 1914.

409

In the case of Hoyle vs Southern Athletic Club, 48 A.,
879 the Court said on p 883:

"It might well be that in point of fact no notices
were actually received by any of the parties and yet the
sales could stand, for if the assessments were properly
made and the tax-collector in giving the notices conformed
to the requirements of the statute and of the law, it
would not follow that they would be ineffectual because
they did not reach the parties they were intended to reach.
It frequently happens that citations made through service
at the domicile are mislaid or are not handed to the person
to be cited - none the less the citations - are well made.
Again, in matters of notice of dishonor of notes, if the re-
quirements of a statute be followed, as to time, place, and
mode of service, as for instance by placing a letter proper-
ly addressed and prepaid in the postoffice within the time
fixed by law, it has been held that it is not necessary to
prove that the letter was received and that miscarriage
would not prejudice the party giving notice. ✗We are there-
fore to inquire whether there be evidence before us going
to show that notice was properly sent". See 51 A., 972 (979)
In Baum vs Smith, 127 La., 1089 the Court said on p 1091,

*6 Wheaton*
*102-104*
*4 Amt Eng*
*Enc Law*
*428 (d)*
*1092:*

"Allowing him, however, the full benefit of his positive
statement that he did not receive the notice, the fact re-
mains that the notice was regularly mailed to him in the
manner required by law, and the question is presented
whether, where all the formalities prescribed by law have
been observed in the proceedings for the enforcement of
the payment of delinquent taxes, the tax sale is to be set
aside, simply because the tax debtor is able or willing to
testify that as a matter of fact he never received the de-
linquency notice . We think not". 144 La., 934.

The case of Mc Crory in 130 La., 212 is not in conflict
with these cases, because the Sheriff was informed of the tax-pay-
er's correct address and yet failed to notify him.

But if these notices by registered letters addressed to
the plaintiff under Section 51 can be considered insufficient, the

410

defendant offered in evidence four copies of "The Jefferson Democrat," dated May 2d and 9th, 1914 and May 8th and 15th, 1915 containing, in accordance with Section 52 of the Act of 1898 quoted above, a "Special Notice to unknown owners of immovable property in the Parish of Jefferson", notifying them of their delinquency for taxes and notifying them that if they were not paid within twenty days the Tax Collector would sell the property assessed to pay the taxes; in these advertisements appear, in raised letters, the name of "Joseph Tomsany" and the description of the property claimed herein.

These advertisements appear to us to meet the requirements of Section 52 as to the notice to be "addressed to all unknown owners and non-residents whose post-office address is unknown". The Sheriff had complied with Section 51 by mailing to the plaintiff a registered notice addressed to the place where the property was situated, and where it was presumed the plaintiff had his residence, or place of business, or an agent; the notice was mailed back to him; the Sheriff for lack of better information, followed the course dictated by Section 52. The evidence is that plaintiff was a non-resident.

But the plaintiff objected to the introduction of these advertisements upon the ground that it was-

> "an attempt to vary the declaration in the tax deeds,
> to the effect that notice of delinquency was made by
> service of registered mail".

We do not think that the objection was well made. The evidence did not vary or contradict the tax deed. It merely proved a service in addition to the one mentioned in the deed, and went to show that the notice required by law had been given.

In the case of Harvey vs Gulf States Co., 108 La., 550, the Court said on p 552:

> "Plaintiffs objected to the admission in evidence of the
> official written return of the officer who had served the
> notice, and also to parol evidence showing the manner of
> the service, on the ground that "the act of sale declares
> that service was made on Clarence J. Harvey and others,
> and defendant cannot contradict this declaration in that
> act". We think this evidence was admissible. The recital

411

of the deed was an error, and such errors in Sheriff's deeds may be shown by parol. 46 A., 1571; 35 A., 560; 36 A., 549; 12 A., 142; 41 A., 15; 42 A., 918".

The case of the Succession of Williams, 112 La., 1075 is not in conflict. In that case the deed recited that the notice had been served on the tax payer in person, or left at his residence or place of business, and that it had been addressed to Williams. The defendant attempted to show that the notice had been addressed to an "owner unknown" and that the property had been advertised and sold as such. The Court properly said that such evidence would make a different case from that presented by the deed and properly excluded the evidence.

In the case of Adams vs Basile, 35 A., 101, the Court said: "it may be that the service was good. It is the return which is bad. x x x In such a case the Sheriff would be authorized to make a proper return by amendment or otherwise conforming with the facts and the law. 21 A., 27; 10 M., 91; 2 R., 485; 8 R., 236; 3 N. S., 489; 5 La., 287".

But the rules governing notices in tax matters do not partake of the strictness applicable to citations. Mohr. vs Marks, 39 A., 579; 108 La., 551.

In Webre vs Lutcher, 45 A., 574, the Court said:

"The question presented is whether or not the plaintiff was an unknown owner of assessed immovable property? If so, it is not pretended that the notice by publication is not legal and valid. x x x If the tax payer fails in his duty in furnishing information as to his residence, he has himself to blame if he finds himself in the list of unknown owners of property. x x x He (the Sheriff) could not comply with Sec. 50 because he did not know the absent owner. He did not live in the parish and had no agent there, therefore he could not make either a personal or domiciliary service. He could not serve notice by mail because he did not know the absent owner's address. There was but one mode of making service, which was by publication, as prescribed in Art. 210 of the Constitution and Sec. 51 of Act 96, for service on unknown owner of assessed immovable property. The plaintiff was to all intents and purposes

412

and within the meaning of Art. 210 of the Constitution and Act 96 of 1882 an unknown owner of the property asse to J. M. Webre".

The Act of 1898 is broader than the Act of 1882. While the latter speaks only of "unknown owners", the former governs "non-residents whose post-office address is unknown" by the same rules which apply to unknown owners; and plaintiff was a non-resident whose post-office address was unknown.

III. Service of citation in this case was made on defendant on December 11th, 1917. The first sale to him was recorded on June 26th 1914. More than three years therefore had elapsed between the date of the recordation of the tax deed and the filing of this suit, and under Article 233 of the Constitution prescription had accrued in favor of the defendant as regards the first sale. The interpretation of that Article by the Supreme Court is, that legal possession by tax title during three years is sufficient to base the prescription of three years in the absence of corporeal possession by the tax-debtor. 109 La., 641 (650, 657); 138 La., 398, 507.

IV. But, at the time of the second adjudication to the defendant, the plaintiff was owner of one undivided half of the property and the defendant of the other undivided half. They were owners in common. In Williams vs Harrell, 132 La., 1 it was decided that

> "a co-owner who purchases property held in common at a sale for taxes acquires no greater interest in the property than he held before, except that he has a claim against his co-owners for reimbursement for taxes and expenses paid by him",

quoting numerous authorities.

V. Defendant cannot recover for improvements on the land. "It is well settled that a co-proprietor cannot erect improvements on the common property and compel the other joint owner to contribute to pay for the same, without the consent of the latter". 26 A., 255; 23 A., 562; 43 A., 867.

It is otherwise as to taxes paid by the co-proprietor.

It is therefore ordered that the judgment of the District

413

Court herein be reversed and amended; and it is now ordered that there be judgment in favor of the plaintiff and against the defendant annulling and setting aside the sale made by the Sheriff to the defendant, John D. Abadie, of the undivided half of a portion of the Ida Plantation more fully described in the act of sale dated August 26th, 1915 for the taxes of 1914 assessed in the name of Joseph Tomsany, registered on September 3d, 1915, and that the inscription thereof in Book 36 p 605 be cancelled; *And that plaintiffs' demand* ✗

It is further ordered that this judgment shall take effect only after the plaintiff herein shall have reimbursed the defendant herein the price of *the above* sale and all taxes and costs paid with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments as provided by the constitution;

It is further ordered that in other respects the reconventional demand of defendant be rejected.

*Costs of appeal to be paid by plaintiff —*

Judgment reversed and amended.

April 19th, 1920.

✗ *As to the other undivided half based on the sale dated June 20th or 26th 1914 be rejected;*