## Austin's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication of

GEST, J., Auditing Judge.—Louise S. Austin died on January 14, 1921, leaving a will, by the eighth paragraph of which she provided as follows:

"I give and bequeath the sum of Fifty Thousand dollars ($50,000.00) unto Girard Trust Company, a corporation, of the City of Philadelphia, State of Pennsylvania, and unto its successors and assigns, In Trust nevertheless, for the following uses and purposes, that is to say: In Trust, to invest, reinvest and keep invested the same, and to collect the income therefrom, and to pay over the entire net income, after the deduction of all necessary charges and expenses, unto my mother, Emily L. Suydam, for and during the term of her natural life. Upon the death of my said mother, Emily L. Suydam, I direct that the said net income shall be paid over equally, share and share alike, unto the Guardian or Guardians of the children of my daughter, Emilie Austin Jones, until they shall respectively attain the age of twenty-one years. Upon the arrival at the age of twenty-one years of each of the children of my daughter, Emilie Austin Jones, respectively, after the death of my said mother, Emily L. Suydam, I direct that a proportionate share of the principal of this trust shall be assigned, transferred and paid over unto such child of my said daughter so attaining the age of twenty-one years, absolutely."

The fund presently accounted for was awarded to the present accountant by the adjudication of Lamorelle, P. J., of October 4, 1921.

Emily L. Suydam, life tenant, is stated to have died on February 14, 1923; leaving a will, of which Emilie L. S. Moore is stated to be executrix.

The occasion of the filing of the present account was the arrival at majority on January 27, 1932, of Samuel Austin Jones, only child of Emilie Austin Jones. By writing annexed hereto, the said Samuel Austin Jones stated that he has examined the account, that he approves it and requests the award of the residue to himself directly without the necessity of his appearance at the audit. He also certified that he attained his majority on January 27, 1932.

The petition for distribution prayed that the entire estate be awarded to Samuel Austin Jones, but, upon consideration of the will, I advised counsel

that a trustee should be appointed for possible unborn issue of Emilie Austin Jones, and, accordingly, on December 9, 1932, Shippen Lewis, Esq., was appointed as such trustee. Subsequently, on June 9, 1932, briefs were presented by John S. Sinclair, Esq., in behalf of Samuel Austin Jones and of The Pennsylvania Company for Insurances on Lives, etc., guardian of Samuel Austin Jones, by appointment of this court on April 14, 1923; and by Shippen Lewis as trustee for possible unborn children of Emilie Austin Jones.

While no formal testimony was taken, it appears from the statements of counsel and from the records of the case, that Emilie Austin Jones was born on November 26, 1885, and is now in her forty-seventh year, and her husband, to whom she was married April 22, 1908, is also living. The will of the testatrix was dated December 22, 1920, and Emilie Austin Jones was 34 years old. Mr. Lewis stated in his brief that she had then been married for 13 years, and Samuel Austin Jones was nearly 10 years of age.

In these circumstances, it was argued in behalf of Samuel Austin Jones that the class of remaindermen was closed upon his attaining his majority, and therefore he is now entitled to the entire estate. On the other hand, counsel for the trustee appointed to protect the rights of possible unborn children of Emilie Austin Jones argued that the class could not be closed until her death, and consequently the estate should be held in trust until that event shall have occurred. Counsel on both sides presented very able briefs upon this interesting question.

I would remark in the beginning that so long as Emilie Austin Jones lives there is a possibility of her having other children. She is only in her forty-seventh year, and there is not only a legal possibility of the birth of other children: List v. Rodney et al., 83 Pa. 483; Sterrett's Estate, 300 Pa. 116, 123 (the latter being an extreme case in its facts) ; but some remarkable instances of childbearing at the mother's very advanced age may be found in the books on medical jurisprudence. In "Anomalies and Curiosities of Medicine", by Gould & Pyle, Philadelphia, 1897, there are noted many remarkable cases of conception by women of sixty years and over, apparently well authenticated by medical authority. In some cases, such as Daly's Estate, 26 Dist. R. 299, where it appeared from medical testimony that the woman was physically incapacitated, and Mellon's Estate, 16 Phila. 323, Gowen's Appeal, 106 Pa. 288, and Van Beil's Estate, 18 Dist. R. 512, the trusts have been terminated, where all parties presently interested desired it, on the entry of appropriate security, but I do not think that the decision of the present case is to be determined by these authorities but upon more general grounds.

Now the testatrix has here, in the eighth paragraph of her will, distinctly expressed inconsistent intentions. She says that on the arrival at majority of "each of the children" of her daughter, a proportionate share of the principal shall be paid over to such child of her daughter; that is, the beneficiaries are all the children of her daughter, and yet that each child shall be entitled to his distributive share on arrival at majority. I confess that, if I were to decide the question unaided by authority, I would hold that the estate should remain intact until the death of Mrs. Jones, when it would be definitely ascertained how many children she could possibly have; as I would be of opinion that the controlling intention of the testator was that all the children should each take "a proportionate share" rather than that they should take on attaining a certain age. I must, however, consider the cases on the subject, which are numerous and quite fully reviewed in the briefs of counsel.

The English decisions recognize the difficulty of the problem and lay down the rule that where a gift is made to such children of a class as may reach a

certain age, as is the case here, the class is closed when one member of it reaches the prescribed age, and no after-born child can be included in it: Andrews v. Partington, 3 Bro. C. C. 401, In re Chartres, [1927] 1 Ch. 466, In re Emmet's Estate, 13 Ch. Div. 484, 3 Jarman, 1650; and hold that this is adopted as a "rule of convenience," although it is frankly conceded that this is merely cutting the knot rather than untying it. For, as Lord Chancellor Loughborcugh, in Hoste v. Pratt, 3 Ves. 730, acutely remarked: "all convenient constructions are convenient only to the parties, who profit by it; not to the children, who are excluded." In fact the rule has been frequently criticised. The Master of the Rolls, in Leake et al. v. Robinson et al., 2 Mer. 363, 383, said that the rule of Andrews v. Partington, 3 Bro. C. C. 401, was "artificial." The Lord Chancellor (Thurlow) in Andrews v. Partington said he had often wondered how it came to be so decided, there being no greater inconvenience in the case of a devise than in that of a marriage settlement, where nobody doubts that the same expression means all the children. Lord Chancellor Eldon in Whitbread v. Lord St. John, 10 Ves. 152, followed the rule, merely remarking, "I cannot take this case out of the authorities." Lord Chancellor Thurlow in Hill v. Chapman, 1 Ves. Jun. 405, said the rule had stood too long to be shaken, but that when first raised, it went satis ex arbitrio. Further remarks upon the rule may be found in 3 Jarman on Wills, 7th Ed. 1650, and in In re Emmet's Estate, 13 Ch. Div. 484, In re Stephens, [1904] 1 Ch. 322, In re Chartres, [1927] 1 Ch. 466. In this last case, Astbury, J., commented upon the "irony of the rule", criticised its "convenience", said that "many judges have commented upon the rule and some have deplored it", and added that it is not to be extended, except where necessary, having regard to the fact that it is a rule which defeats in most cases the deliberate intention of the testator. This so-called rule of convenience does no impress me as logical, but, as a judge of the first instance, I am bound to follow the decisions of our own courts, to which I shall briefly advert.

In Pennsylvania, the leading case appears to be Heisse v. Markland, Exec., 2 Rawle 274, decided in 1830, where Gibson, C. J., cited Ellison v. Airey, 1 Ves. Sr. 111, and followed the English rule, remarking that the time of distribution is in itself a circumstance of paramount consideration. This case was followed in Schuldt's Estate, 199 Pa. 58. In Bonaffon's Estate, 16 Phila. 345, better reported in 14 W. N. C. 501, the question was carefully considered by Penrose, J., as auditing judge, and by Ashman, J., for the court in banc, and the like result was reached. See also McBride's Estate, 152 Pa. 192.

It does not seem necessary for me to prolong this discussion by a comparison of this eighth paragraph of the will with the fourth paragraph thereof or a discussion of other cases, as I feel bound by those which have been cited, and I therefore hold that Samuel Austin Jones is entitled to the entire trust estate.

I am of opinion, however, that the learned guardian ad litem should file exceptions to this adjudication, as the facts of the case and the amount of the estate are such that the opinion of the court in banc is desirable.

*John S. Sinclair,* for exceptions; *Shippen Lewis,* contra.

LAMORELLE, P. J., December 1, 1933.—A trust of $50,000 for the benefit of the mother of testatrix terminated by the death of the cestui que trust, whereupon that provision of the will became effective which provides that upon the arrival of each of the children of a daughter at the age of 21 years, such child shall receive a proportionate share of the principal.

The daughter, who is alive, has one child who has recently reached the age

of 21 years. There are no other children, but there is a legal possibility that there may be.

The auditing judge awarded the one child the entire fund, and the exceptions are by a trustee for possible unborn children, such trustee having been appointed by the auditing judge to raise the question: What rights, if any, have those possible children?

In Hawkins on Wills (Sanger, 2d ed.) 90, we find this rule. "A devise or bequest to the children of A., or of the testator, means, *prima facie*, the children *in existence at the testator's death:* provided there are such children then in existence. (*Viner* v. *Francis*, 2 Cox, 190; *Mann* v. *Thompson*, Kay, 638.)" And it is modified to this extent (p. 95): "RULE. A devise or bequest of a corpus or aggregate fund to children as a class, where the gift is *not immediate*, vests in all the children in existence at the death of the testator, but so as to open and let in children subsequently coming into existence before the period of distribution. (*Devisme* v. *Mello*, 1 Bro. C. C. 537; *Browne* v. *Hammond*, Johns., 212, n. (*a*); [*Re Dawes' Trusts*, 4 Ch. D. 210].)"

Our earliest and seemingly leading case is Heisse v. Markland, 2 Rawle 274, wherein a sum of $30,000 was directed to be held in trust, the interest to be used for the support and education of all the children of a son, born and to be born, and to divide and pay the principal in equal parts to the children when and as they respectively arrived at the age of 21 years. At the time of the making of the will and at the time of the death of testator, this son had five living children. When the first of these children reached the designated age, there were ten living children, and in a case stated it was agreed that there might be more. One of the ten was awarded one tenth, the Chief Justice (Gibson), speaking for the court, saying (at page 275): "In *Ellison* v. *Airey*, 1 Ves. 111, it was held, that where a legacy is to be distributed among a number, not named, but described in general terms, all who answer the description at the appointed time of distribution, shall take in exclusion of those who may happen to answer it afterwards. Accordingly, it has since been determined in a train of cases,* not authority here, it is true, but nevertheless founded in reason and necessity, that in case of a bequest to the children of a person named, as they respectively attain the age of twenty-one, none shall take who was not born at the period prescribed for distribution. And it is certain, that slight indications of an intent to the contrary, such as the words 'born, or to be born,' will be insufficient to found an exception." A footnote referring to the above asterisk is as follows: "*See particularly *Whitbread* v. *St. John*, 10 Ves. 152, and *Gilbert* v. *Boorman*, 11 Ves. 238."

In Schuldt's Estate, 199 Pa. 58, in a will somewhat similar to that in the instant case, where a trust was created for five grandchildren by name, the will further provided: "Should there be any more grandchildren born unto my son Edward, then such child or children shall share equally with the others, above mentioned grandchildren." The court entirely ignored the fact that other grandchildren might be born. The case arose because one of the five named grandchildren attained majority, and as one of the five grandchildren was then dead and the will provided that there should be a division among the surviving grandchildren, the court awarded one fourth of the fund to the child who was then of age and directed that the remaining three fourths should remain in trust. The Supreme Court, in a per curiam opinion, stated: "We concur in the conclusion announced by the learned judge of the orphans' court, and affirm the decree entered by him." See also, Smith's Estate, 226 Pa. 304.

In Bonaffon's Estate, 14 W. N. C. 501, this court in an adjudication by Judge Penrose and an opinion by Judge Ashman applied the rule. The facts,

briefly stated, are that the will after an equitable life estate in testator's mother, gave that portion of the estate, in trust, to pay the income to a brother's children, born and to be born, until the youngest attained the full age of 21 years, at which time the estate was to be converted into money and divided equally among them.

While those charged with the administration of the law have in many cases applied the rule reluctantly, and while many reasons have been given, such as convenience (defined in one of the definitions found in the Oxford English Dictionary as "saving of trouble"), inconvenience, expediency, necessity, etc., it would seem that the living are to be preferred to those who may never come into existence; that, a distribution being ordered at a given time to someone actually in existence, this part of the will could not be carried into effect if such mandate was delayed to await the possibility of more children.

As we agree with the auditing judge, the exceptions will be dismissed, directing however, that because of the large sum involved and the hesitancy manifested in applying an artificial rule, an appeal be taken.

All exceptions are dismissed, and the adjudication is confirmed absolutely.